IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COMITE FIESTAS DE LA CALLE SAN SEBASTIAN, INC., **Plaintiff**, v. CARMEN YULIN CRUZ, *et al.*, **Defendants**. | CIVIL NO. 14-1929 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

    Plaintiff Comite Fiestas de la Calle San Sebastian, Inc. ("Comite") brought this action against defendants Mayor Carmen Yulin Cruz ("Mayor Cruz") and the Municipality of San Juan ("Municipality") alleging that they violated the Comite's First Amendment rights, made libelous statements, and used the Comite's trademarks. (Docket No. 53.) Defendants answered. (Docket No. 64.) Before the Court are defendants' motion to dismiss (Docket No. 79), plaintiff Comite's opposition (Docket No. 88), and defendants' reply, (Docket No. 92). For the following reasons, the Court **DENIES** defendants' motion to dismiss.

**BACKGROUND**

**Factual Allegations**

    Because defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the following non-conclusory factual allegations stated in plaintiff Comite's

Civil No. 14-1929 (FAB)                                                    2

amended complaint and draws all inferences in its favor.  See Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 712 (1st Cir. 2014).

The Fiestas de Calle San Sebastian ("Fiestas") is a celebration of Puerto Rican culture that is held each year in mid-January.  (Docket No. 53 at pp. 4-5.)  During the Fiestas, the Comite sells food and beverages at rented kiosks and coordinates events in the neighborhood of Old San Juan.  Id. at pp. 6-7.  The Comite and the Municipality coordinate on some of the Fiestas' activities.  Id. at p. 8.

While planning for the 2015 Fiestas, the Comite and the Municipality, through Mayor Cruz, disagreed on several items, including the locations and times for certain events and the number of and terms of use for kiosks to be used by the Comite.  (Docket No. 53 at pp. 14-16.)  The Comite and Mayor Cruz also exchanged heated words.  Id. at pp. 14, 16-17.  During a radio program, one of the Comite's founders accused Mayor Cruz of "convert[ing] Old San Juan into a bar last year."  Id. at p. 14.  Mayor Cruz, meanwhile, publicly stated that the Comite was "a private estate" that sought profit through illegal actions and "us[ed] the Fiestas de Calle San Sebastian as its personal ATM card."  Id. at p. 16.

**Procedural Background**

The Comite brought suit on December 31, 2014, before the start of the 2015 Fiestas.  (Docket No. 1.)  To ensure smooth operation

Civil No. 14-1929 (FAB)                                              3

of the 2015 Fiestas, the Court asked the parties to negotiate a settlement.  (Docket No. 53 at p. 17.)  On January 7, 2015, the Court held a hearing at which the Comite and the Municipality discussed a contract for the 2015 Fiestas.  Id. at p. 24.  On January 15, 2015, the Comite and the Municipality entered into the Lease/Assignment Contract (Booths and Use of Quinto Centenario Square San Sebastian Street Festival 2015)[1] ("Lease Contract").  (Docket No. 79-1.)  On March 9, 2015, the Comite filed an amended complaint.  (Docket No. 53.)

## DISCUSSION

Defendants argue that the Court should dismiss plaintiff Comite's amended complaint pursuant to Rule 12(b)(6) because Comite waived its claims regarding the Fiestas by signing the Lease Contract.  (Docket No. 79 at pp. 7-9.)  Specifically, defendants argue that the Lease Contract clearly states that all claims by the Comite against the Municipality are waived and future claims barred

---

[1] In order to consider documents not attached to or incorporated into the complaint, a court must convert a motion to dismiss for failure to state a claim into a motion for summary judgement unless the documents are public records, the authenticity of the documents is not disputed, the documents are central to plaintiffs' claim, or the documents are sufficiently referenced in the complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The Court reviews the Lease Contract on this motion to dismiss because it is central to the parties' First Amendment claims and its authenticity is not challenged.

Civil No. 14-1929 (FAB) 4

and, as a result, the Court's review of the contract should be limited to the contract's text.[2] (Docket No. 79 at pp. 7-8.)

**The Contract Language is Clear**

"An agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." In re Advanced Cellular Sys., Inc., 483 F.3d 7, 12 (1st Cir. 2007) (internal quotation marks and citations omitted) (applying Puerto Rico law). When a contract contains several sections or clauses, they "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." P.R. Laws Ann. tit. 31, § 3475; see Yordan v. Burleigh Point, Ltd., 552 F. Supp. 2d 200, 204 (D.P.R. 2007) (Besosa, J.); P.R. Elec. Power Auth. v. Philipps, 645 F. Supp. 770, 772 (D.P.R. 1986) (Fuste, J.) ("[T]he terms of the contract must be read together and harmonized to arrive at the intention of the parties.").

Here, defendants claim that the clear meaning of Lease Contract section II.6 is that all claims by the Comite against the Municipality are waived and future claims barred. (Docket No. 79 at pp. 7-9.) The text of section II.6 reads:

---

[2] Plaintiff Comite argues that the Lease Contract has a different meaning than what defendants assert, and that the Court should consider extrinsic evidence to determine the intent of the parties. See Docket No. 88 at pp. 10-11; see also P.R. Laws Ann. tit. 31, § 3472.

> It is in both parties' interest to settle the controversies that exist between them. Therefore, the appearing parties agree not to initiate any legal proceedings related to the 2015 San Sebastian Street Festival once this contract has been executed. Specifically, the Committee hereby waives any judicial action and/or claim against the Municipality, its employees and/or representatives, as well as any judicial action and/or claim against the sponsors and/or collaborators who, in any way, contribute to or facilitate the 2015 San Sebastian Street Festival.

Lease Contract § II.6.

As required by Puerto Rico law, P.R. Laws Ann. tit. 31, § 3475, the Court must read this section in conjunction with the whole of the contract, including section II.5, which reads:

> The appearing parties agree to execute this Contract under . . . the agreements reached by the parties in the hearing held on January 7, 2015 before the Federal Court in the case of Comite Fiestas de la Calle San Sebastian v. Municipality of San Juan, et al[.], civil case no. 14-01929. . . .

Lease Contract § II.5.[3]

The Puerto Rico Supreme Court recognizes provisions incorporated by reference when interpreting contracts. See, e.g., Caguas Plumbing v. Cont'l Constr. Corp., 155 P.R. Dec. 744, 751 (P.R. 2001); Sociedad de Gananciales v. Velez & Assoc., 145 P.R. Dec. 508, 524 (P.R. 1998); see also Benitez-Navarro v. Gonzalez-Aponte, 660 F. Supp. 2d 185, 191 (D.P.R. 2009) (Gelpí, J.) (considering contract provisions incorporated by reference when

---

[3] The agreements reached at the January 7th hearings are also referenced in section IV of the Lease Contract regarding the terms of the use of the Quinto Centenario Square. Lease Contract § IV.

interpreting a contract pursuant to Puerto Rico law). Contracts need not "use the traditional language of 'incorporating by reference'" so long as "language in the agreements clearly communicate[s] the purpose of incorporating the . . . clause." Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 43 (1st Cir. 2012) (stating that "no such magic terms are required").

Here, the parties incorporated the agreements reached at the January 7th hearing into the Lease Contract by expressly referencing those agreements in section II.5, thus making those agreements part of the Lease Contract.

The agreements are recorded in the Court's minutes from the January 7th hearing,[4] which state in relevant part:

> After various hours of negotiations, the parties informed that an agreement had been reached, under the following terms: . . . Free speech and religious freedom causes of action, libel action against the Mayor and trademark issue will remain; a regular schedule will be set after the complaint is answered.

(Docket No. 16 at pp. 2-3.)

Putting it all together, the Lease Contract read as a whole states that plaintiff Comite agrees to "waive any judicial action and/or claim against the Municipality," Lease Contract § II.6, except the existing "[f]ree speech and religious freedom causes of

---

[4] Defendants concede that at the January 7th hearing both parties agreed that the First Amendment, libel, and trademark claims would remain. (Docket No. 79 at p. 1.) Defendants argue that this agreement is not binding, however, because after subsequent negotiations, the parties chose not to include an agreement to proceed with these claims in the Lease Contract. Id. at p. 7.

action, libel action against the Mayor[,] and trademark issue," (Docket No. 16 at p. 3.)  Because this language can only be understood in one sense, *i.e.*, that the First Amendment, libel, and trademark claims will proceed in litigation, the Court finds that the Lease Contract is clear and unambiguous.  See In re Advanced Cellular, 483 F.3d at 12.  Accordingly, the Court does not consider extrinsic evidence as plaintiff Comite requests.  See P.R. Laws Ann. tit. 31, § 3472.

Due to the clear and unambiguous language of the Lease Contract retaining plaintiff Comite's First Amendment, libel, and trademark claims, the Court **DENIES** defendants' motion to dismiss.

**If the Contract Were Ambiguous, Extrinsic Evidence Would Go to the Factfinder[5]**

Even if the Lease Contract did not incorporate the January 7th agreement to retain plaintiff Comite's First Amendment, libel, and trademark claims, defendants would still be unsuccessful in their motion to dismiss because the contract would be unclear and extrinsic evidence of the parties' intent would require evaluation by a jury.

---

[5] The Court considers this argument purely in the alternative and does not in any way intend for the following discussion to affect the Court's holding that section II.5 clearly incorporates the January 7th agreement to retain plaintiff Comite's First Amendment, libel, and trademark claims.

Civil No. 14-1929 (FAB)                                                  8
_____

    Defendants argue that sections II.6 and IX.7[6] of the Lease Contract establish that all of plaintiff Comite's claims against defendants are waived.  (Docket No. 79 at pp. 3, 7.)  Plaintiff Comite, on the other hand, argues that the Lease Contract merely established "a way for the 2015 Fiestas de la Calle San Sebastian to take place without the need for a judicial imposition of terms." (Docket No. 88 at p. 12.)  Plaintiff Comite supports its argument by interpreting section II.6 as 1) only precluding initiation of new lawsuits, 2) not expressly dismissing the current action, which was initiated before the Lease Agreement was executed, and 3) not dismissing plaintiff Comite's libel claims because those claims are against Mayor Cruz in her personal capacity and she is not a party to the Lease Contract.  <u>Id.</u> at pp. 2, 8-9.  Because the language of the Lease Contract sections II.6 and IX.7 could support both plaintiff Comite's and defendants' interpretations, the Court would need to consider extrinsic evidence of the parties' intent.

    Plaintiff Comite offers extrinsic evidence for the Court to consider.  <u>Id.</u> at pp. 5-8.  Plaintiff Comite claims that defendants' failure to raise their contractual dismissal argument in motions, hearings, and discovery submissions after execution of the Lease Contract establishes that defendants did not intend for

---

[6] "This Contract is the sole agreement between the parties regarding the services described above and invalidates any prior agreement . . . whether written or verbal as to what was agreed to in this contract with regards to the booths and the use of the Quinto Centenario Square."  Lease Contract § IX.7.

the claims to be dismissed in the Lease Contract. Id. (referencing the initial scheduling conference and memorandum, defendants' motions to compel, defendants' answers, and a joint party meeting on July 2, 2015). Consideration of extrinsic evidence to establish the intent of the contracting parties is an issue for the factfinder unless the extrinsic evidence is "so one-sided that no reasonable person could decide the contrary." Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 54 (1st Cir. 2010); Den Norske Bank AS v. First Nat. Bank of Bos., 75 F.3d 49, 52-53 (1st Cir. 1996). Thus, even under this alternative theory, resolution of the ambiguity would have to go to the jury and defendants' motion to dismiss would be **DENIED**.

## CONCLUSION

Because the Lease Contract clearly states that plaintiff Comite's First Amendment, libel, and trademark claims were not waived or settled, the Court **DENIES** defendants' motion to dismiss, (Docket No. 79).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 17, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE