**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

COMITE FIESTAS DE LA CALLE SAN
SEBASTIAN, INC.,

    **Plaintiff,**

        **v.**                **CIVIL NO.** 14-1929 (FAB)

CARMEN YULIN CRUZ, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

Plaintiff Comite Fiestas de la Calle San Sebastian, Inc. ("Comite") brought this action against defendants Mayor Carmen Yulin Cruz ("Mayor Cruz") and the Municipality of San Juan (collectively "MSJ") alleging that during planning for the Fiestas de la Calle San Sebastian ("FCSS") the MSJ made libelous statements, contracted in bad faith, used the Comite's trademarks, and violated the Comite's Constitutional rights, including free exercise of religion, freedom of association, freedom of speech, and freedom from political discrimination. (Docket No. 53.)

Before the Court are defendants' motion for summary judgment, (Docket No. 107), plaintiff's opposition, (Docket No. 118), defendants' reply, (Docket No. 161), and plaintiff's sur-reply, (Docket No. 166). Also before the Court are defendants' motion in compliance with the Court's Order at Docket No. 203, (Docket No. 207), plaintiff's opposition, (Docket No. 210), and defendants'

reply, (Docket No. 214).  For the following reasons, the Court **GRANTS** defendants' motion for summary judgment and **ACCEPTS** defendants' motion in compliance with the Court's Order at Docket No. 203.

## MOTION IN COMPLIANCE

On April 11, 2016, the Court granted plaintiff Comite's motion for sanctions and motion for order to show cause because defendants failed to:

3.    Produce the documentation of Buena Vibra Group's compliance with its obligation to send the profits of four kiosks as well as the 50/50 split of the profits from the drinks to the Luis Muñoz Marin Park pursuant to Contract Number 2013-00515.

4.    Produce evidence of the creation of a special account to benefit the Luis Muñoz Marin Park as stated in Contract Number 2013-00515.

5.    Produce the detailed invoice required by Contract Number 2013-00515 in clause Four.[1]

6.    Produce all contracts with kiosks in 2013 for the Fiestas de la Calle San Sebastian.

7.    Produce copies of the . . . Insurance Policy benefitting the Municipality of San Juan, Copy of promoter's license, Workers' Compensation Policy . . . .

8.    Produce evidence of all money paid to Buena Vibra Group, Inc. by the Municipality of San Juan as a consequence of Contract 2014-001507 . . . .

---

[1] Contract Number 2013-00515 clause four states, "[t]o be able to make the payment, it will be necessary that [Buena Vibra] present a bill where it states in detail the services rendered and the corresponding registry of hours worked, which will be certified by the Executive Director or its authorized representative."  (Docket No. 170-11 at pp. 7-8.)

> 10. Produce copies of all the contracts, invoices, and documentation as to sponsors as required by Contract 2014-001507 under the "Specific Aspects" section.

(Docket No. 203 at pp. 2, 6-10.)  The Court ordered defendants to pay a $700 fine and show cause why the Court should not accept as fact the following statement:

> The Municipality of San Juan, entered into contracts with Buena Vibra Group, Inc. for the 2013 and 2014 Fiestas de Calle San Sebastian without first obtaining all required documents and proof of compliance with previous contracts, but refused to enter into a contract with Comite Fiestas de la Calle San Sebastian until they produced those documents.

Id. at p. 11.  Following the Court's Order, defendants submitted additional documents on April 25, 2016.  (Docket Nos. 207, 214.) The Court finds that defendants have produced all documents in response to Request 4, (Docket No. 207-2 at p. 1); Request 7, (Docket Nos. 207-3; 207-4; 207-5), and Requests 5, 6, 8, and 10 (Docket Nos. 214-1; 214-2).  Defendants have failed to produce documents in response to Request 4 because they have not shown that funds were deposited by Buena Vibra Group into the Luis Muñoz Marin Park account.  See Docket No. 207-2 at p. 2.  The Court, however, does not deem this single omission to be adequate support for accepting as fact the proposed statement of disparate treatment. Accordingly, the Court **ACCEPTS** defendants' motion in compliance with the Court's Order at Docket No. 203 and **DECLINES** to accept as fact the proposed statement of disparate treatment.

## MOTION FOR SUMMARY JUDGMENT

### I.   SUMMARY JUDGMENT STANDARD

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (quoting Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012)).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). "When the nonmovant bears the burden of proof on a particular issue, she can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Id. at 450-51. A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

Local Rule 56 requires "[a] motion for summary judgment [to] be supported by a separate, short, and concise statement of material facts," Local Rule 56(b), "followed by a citation to the specific page or paragraph of identified record material supporting the assertion," Local Rule 56(e).  See Total Petroleum P.R. Corp. v. Colon, 819 F. Supp. 2d 55, 60-61, 72 (D.P.R. 2011) (Besosa, J.) (denying defendants' motion for summary judgment when movant failed to support asserted facts properly); see also Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) ("We repeatedly have emphasized the importance of local rules similar to Local Rule 56 [because] . . . they serve to dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide [and] greatly reduce the possibility that the district court will fall victim to an ambush."  (internal marks and citations omitted)).

A record citation is also required to support each denial or qualification in an opposing statement of material facts.  Local Rule 56(c); Fontanez-Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (quoting Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003) ("This court has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules.")); see also Carrasquillo v. P.R. ex rel. Justice Dept., 494 F.3d 1, 4-5 (1st Cir. 2007) (affirming district court's grant of summary

judgment where plaintiff failed to comply with Local Rule 56(c) and therefore defendant's statement of uncontested fact – that he lacked knowledge of plaintiff's political affiliation – was admitted).

## II.  FACTUAL BACKGROUND

Plaintiff's Counter Statement of Material Non-Controverted Facts contains only one fact that is properly supported in accordance with Local Rules 56(b) and 56(e).[2]  Plaintiff's Responses to Defendants' Purportedly Material, Purportedly Non-Controverted Facts contain only two qualifications of defendants' facts, paragraphs 100 and 101, that are properly supported in accordance with Local Rules 56(c) and 56(e).  (Docket No. 131 at p. 13.)  "In the event that a party opposing summary judgment fails to act in accordance with the rigors that [Rule 56] imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated."  Caban Hernandez, 486 F.3d at 7.  Accordingly, the Court **DEEMS ADMITTED** the facts in defendants' Joint Statement of Unsupported Fact, taking into consideration plaintiff's two qualifications.

In reviewing defendants' motion for summary judgment, the Court considers plaintiff's three supported facts in addition to

---

[2] Plaintiff Comite properly supports the fact that:  "MSJ employee Brenda Cordero testified that 'all the contractors have to provide all [of] these documents. It does not matter if [they] apply or not.'"  (Docket No. 120-2 at p. 20.)

the properly supported facts established in defendants' Joint Statement of Unsupported Fact and Reply Statement of Material Facts, (Docket Nos. 108; 160), and views all facts in the light most favorable to plaintiff Comite as the nonmoving party.

## A.   FCSS

The FCSS is a four-day event that includes religious, cultural, and artistic elements and promotes Puerto Rican culture. (Docket Nos. 108 at p. 7; 131 at p. 9; 108-4 at p. 12.)  The FCSS was created by "Father Madrazo" and revitalized years later by Rafaela Balladares.  (Docket Nos. 108-4 at p. 3; 108-5 at pp. 6-7.)

It is held in Old San Juan.  (Docket No. 170-1 at pp. 16-17.) Performances are held in the Plaza del Quinto Centenario, Plaza de Armas, Plaza de la Barandilla, and Plaza Colon.  Id.  The FCSS is known internationally and was promoted at the Puerto Rico Day parades in the 1990s.  (Docket Nos. 108-2 at pp. 4-6; 108-8 at p. 10; 108 at pp. 11-12; 131 at p. 12.)  A separate festival, also called FCSS, has been held in Miami for three or four years. (Docket No. 108-8 at p. 9.)

## B.   The Comite

Doña Rafaela Valladares was the coordinator of a group named Vecinos de la Calle San Sebastian ("Vecinos").  (Docket Nos. 108-5 at p. 3; 108-11 at p. 4.)  Pursuant to the laws of Puerto Rico, the Comite was incorporated as a non-profit corporation on August 14, 2006.  (Docket No. 108-14.)  It is unknown whether Vecinos changed

its name to the Comite or whether the Comite is a new corporation. (Docket Nos. 108 at p. 2; 131 at p. 3; 108-11 at p. 4.)  Vecinos and the Comite have different members, (Docket No. 108-5 at p. 4), and have never held a joint board meeting, (Docket No. 108-8 at pp. 3-4).

Comite member Carmen Julia Diaz-Carrillo has not seen any document ratifying Vecinos's acts or agreements. (Docket No. 108-5 at p. 18.)  The Comite's president, Eddie Rosado-Ocasio ("Rosado"), who did not participate in the formation of the Comite, (Docket No. 108-11 at p. 5), does not remember if Vecinos transferred legal marks and assets to the Comite using legal documents, (Docket No. 108-8 at p. 4).  Rosado does not remember how Vecinos authorized the Comite to use the name FCSS, (Docket Nos. 108 at p. 2; 131 at p. 4), but he does remember that a meeting was held between the Comite and its lawyers in which ratification was discussed, (Docket No. 108-8 at p. 2).

The Comite is not a religious organization. (Docket No. 160-1 at pp. 3-4.)  Additionally, it does not engage in political activity and considers itself apolitical. (Docket No. 108-11 at pp. 7-8.)  The Comite has no knowledge regarding the political activity or affiliations of the companies Buena Vibra Group or San Juan Family Entertainment. (Docket Nos. 108-4 at pp. 20, 25; 108-8 at p. 6; 108-11 at pp. 9-10.)

The Comite's members advertise the FCSS in Puerto Rico through travel. (Docket No. 108-2 at pp. 5-6.)  Recently, the Comite has

not advertised the FCSS outside of Puerto Rico and it does not have
an advertising budget.  (Docket Nos. 108-8 at p. 10; 108 at p. 11;
131 at p. 12.)

## C.    The MSJ

The MSJ is the legal entity responsible for the FCSS.  (Docket
No. 108-8 at p. 11.)   The MSJ's Art and Culture Department
coordinates entertainment on four stages throughout the FCSS,
ensuring that a portion of the music is traditional Puerto Rican
music as required by the Autochthonous Music Act, P.R. Laws Ann.
tit. 3 § 871.  (Docket No. 170-1 at pp. 13-16.)  Since 2007, the
MSJ has sought sponsors for the FCSS without opposition from the
Comite.  (Docket No. 108-4 at pp. 5-8.)  The MSJ is a political
municipality, but Mayor Cruz has never questioned the Comite
members regarding their political affiliations.  Id. at p. 25.

## D.    Other Participants

Buena Vibra Group is a production company that uses
television, the Internet, and social networks to produce art
festivals and publicity work.  (Docket No. 170-1 at pp. 11-12.)
For the FCSS, Buena Vibra Group provides cultural activities,
theater workshops, shows, sponsorship coordination, and logistical
and artistic support to kiosks set up during the FCSS.  (Docket
No. 170-2 at pp. 8-9, 11-16.)  In order to participate in FCSS,
Buena Vibra Group was required to obtain approval to participate
from the MSJ before the FCSS began.  (Docket No. 160 at p. 12.)

Buena Vibra Group was also instructed to provide specified documents before the MSJ would complete payments for services provided.  Id.

San Juan Family Entertainment is a production company on the General Services Administration's General Registry of Bidders. (Docket Nos. 170-1 at pp. 12-13; 170-3 at p. 11.)  The MSJ and San Juan Family Entertainment coordinated the programming for the 2015 FCSS.  (Docket No. 170-1 at p. 19.)  San Juan Family Entertainment employed approximately twenty-four individuals to coordinate this programming.  (Docket No. 170-3 at pp 7-9.)

**E.    Planning & Organizing the 2015 FCSS**

Prior to the 2015 FCSS, Mayor Cruz made statements that "the Comite members were cooking the accounting books."  (Docket No. 108-5 at p. 11.)  After these statements, a Comite member's cousin called and instructed him to "Get out of that." (Docket No. 108-8 at p. 13.)  Despite hearing comments by Mayor Cruz, this cousin still participated in the 2015 FCSS.  Id.

**1.    The MSJ & Comite's Contract for the 2015 FCSS**

Also while planning the 2015 FCSS, the MSJ and the Comite discussed the time, place, and manner in which the Comite's activities would be held.  (Docket Nos. 108-12 at pp. 3-5; 108-9.) The MSJ agreed that the Comite would manage the "dedicatoria de las Fiestas," the ribbon-cutting ceremony, the "baile de epoca," and some kiosks, while the MSJ would manage trash disposal, cleaning,

electric work, insurance protection, and similar duties.  (Docket
Nos. 108-12; 108-9.)   The MSJ suggested that the Comite hold the
baile de epoca on Saturday, January 17, 2015, from 7:00 p.m. until
9:00 p.m.  (Docket Nos. 108-9 at p. 2; 108-12 at p. 3.)

        On January 15, 2015, the MSJ and the Comite signed the
Lease/Assignment Contract (Booths and Use of Quinto Centenario
Square San Sebastian Street Festival 2015) ("Lease Contract").
(Docket No. 108-13.)  The Lease Contract allowed the Comite to use
the Plaza del Quinto Centenario for cultural activities on
Thursday, January 15, 2015, from 5:00 p.m. until 9:00 p.m.  Id. at
p. 3.  The Lease Contract also leased to the Comite twelve kiosks
at no charge, which the Comite could sublease to sponsors for
payment.  Id. at pp. 1-2.  The Comite agreed to be responsible for
all legal obligations of the twelve kiosks including permits,
licenses, endorsements, compliance with Ordinance Number 28, and to
respect the exclusive sponsors obtained by the MSJ.  Id. at p. 2.
The Comite also agreed to coordinate with the MSJ for waste
removal, to clean and maintain their kiosk areas, and to allow the
MSJ and its agents to inspect the assigned area.  Id.  Finally, the
Lease Contract expressed that both parties sought to resolve their
disputes regarding the 2015 FCSS and would not initiate legal
proceedings regarding them.  (Docket No. 108-13 at p. 2.)

        During the FCSS, the Comite dedicated the FCSS to Felix
"Tito" Trinidad, the Comite conducted a ribbon cutting ceremony,

and several religious masses and events were held. (Docket Nos. 108-11 at p. 11; 108-4 at pp. 9, 21-22.)

> ### 2. The Comite's Contracts with Sponsors & Agreements with Artisans

The origin of the marks "La SanSe" and "Fiestas de la Calle" is unknown.[3] (Docket Nos. 108 at p. 7; 131 at p. 10.) Neither the Comite nor the MSJ have used the marks "La SanSe" or "Fiestas de la Calle." (Docket Nos. 108 at pp. 9-11; 131 at pp. 10-12.) The MSJ, however, has used the mark "Fiestas de la Calle San Sebastian"[4] to advertise the event. (Docket No. 108-8 at p. 12.)

The Comite allows artisans to use the trademarks during the FCSS and does not require payment or pre-approval of designs. (Docket Nos. 108 at p. 7; 131 at p. 9; 108-4 at p. 17.) It requests that the materials be decent and reflect the cultural nature of the FCSS and requires that users of the marks comply with guidelines and directives from the State Historic Conservation Office, Institute of Culture, and the MSJ, including a prohibition on commercial advertisements on bridges, buildings, balconies, roofs, and posts. (Docket Nos. 108-4 at p. 10; 108-2 at pp. 4-5.)

---

[3] "Fiestas de la Calle" may have originated through public use and "La SanSe" may have originated through a promotional campaign by a beer company. (Docket Nos. 108-5 at p. 6; 108-4 at pp. 14-15.)

[4] For consistency, the Court continues to use FCSS to abbreviate "Fiestas de la Calle San Sebastian," but notes that the Comite claims the mark in its extended form. (Docket No. 108-5 at pp. 6, 9.)

No other limitations or controls are placed on the artisans use of the marks.  (Docket Nos. 108-4 at pp. 10, 16-17; 108 at pp. 8-9; 131 at p. 10; 108-8 at p. 7.)

The Comite contracts with sponsors for regulation of the sponsors' trademarks throughout the event.  (Docket Nos. 108-4 at pp. 10-11; 108 at p. 8; 131 at p. 10.)  The sponsorship contracts allow sponsors to advertise as "official sponsors of the FCSS," and govern use of the sponsors' names on banners, on projection screens, on advertisements, and in speeches during the event's press conference.  (Docket Nos. 108 at p. 8; 108-3; 108-4 at p. 10; 131 at p. 10.)

The Comite has taken no legal action against artisans, sponsors, or other third parties relating to the use of the "Fiestas de la Calle San Sebastian" mark.  (Docket No. 108-4 at p. 18.)

## III.  DISCUSSION

Plaintiff Comite asserts First Amendment and federal trademark claims against the MSJ, a municipality pursuant to the authority of the Commonwealth of Puerto Rico.  (Docket No. 53.)  Plaintiff brings these claims against municipal officers pursuant to 42 United States Code Section 1983.  Id.

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right."  Omni Behavioral Health v.

<u>Miller</u>, 285 F.3d 646, 650-51 (8th Cir. 2002); <u>see also</u> <u>Lockhart-Bembery v. Sauro</u>, 498 F.3d 69, 74 (1st Cir. 2007) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3 (1979)).  For a claim pursuant to section 1983, a plaintiff must prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 559 (1st Cir. 1989); <u>see also</u> <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 621 (1st Cir. 2000).  "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  <u>Santiago de Castro v. Morales Medina</u>, 943 F.2d 129, 130 (1st Cir. 1991) (quoting <u>Baker</u>, 443 U.S. at 140).

**A.   Trademarks**

Plaintiff Comite alleges that defendants have infringed on its trademarks, used confusingly similar marks, and illegally exploited the good will associated with these marks for their own financial gain in violation of the Lanham Act, 15 U.S.C. § 1125 and Puerto

Rico Trademark Law, 10 P.R. Laws Ann tit. 171 *et seq.*[5]  (Docket
No. 53 at pp. 28-33.)   Plaintiff Comite alleges that, despite
giving non-exclusive licenses to participating artists, it owns and
has used the marks, "La SanSe," "Fiestas de la Calle," and "Fiestas
de la Calle San Sebastian" for forty-four years.  (Docket No. 53 at
pp. 28-33.)   Defendants challenge plaintiff Comite's Puerto Rico
and federal trademark claims on summary judgment questioning
plaintiff's ownership of the marks and the marks' distinctiveness
as required for trademark protection.  (Docket Nos. 107 at pp. 4-
20; 161 at pp. 2-9.)

    United States trademark law, pursuant to the Lanham Act
section 43(a), provides some protection for unregistered marks.
<u>Sallen v. Corinthians Licenciamentos LTDA</u>, 273 F.3d 14, 24 (1st
Cir. 2001).  Section 43(a) of the Lanham Act states:

> Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce
> any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin,
> false or misleading description of fact, or false or
> misleading representation of fact, which . . . is likely
> to cause confusion, or to cause mistake, or to deceive as
> to the affiliation, connection, or association of such
> person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services,

---

[5] "The Puerto Rico Trademark Act of 2009 incorporates elements of
federal trademark law . . . .   Article 26 of the Act is the
analogue to 15 U.S.C. § 1125(a), and it similarly creates civil
liability for infringement of service marks used in Puerto Rico."
<u>Oriental Fin. Grp. Inc. v. Coop. De Ahorro y Credito Oriental</u>, 750
F. Supp. 2d 396, 405 (D.P.R. 2010) (Fuste,J.) *affirmed in part,*
*vacated in part by* <u>Oriental Fin. Grp., Inc. v. Coop. De Ahorro y</u>
<u>Credito Oriental</u>, 698 F.3d 9 (1st Cir. 2012).

or commercial activities by another person[6] . . . shall
be liable in a civil action by any person who believes
that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  "Generally speaking, the [Lanham] Act

proscribes the unauthorized use of a service mark when the

particular usage causes a likelihood of confusion with respect to

the identity of the service provider." Oriental Fin. Grp., Inc. v.

Coop. de Ahorro y Credito Oriental, 698 F.3d 9, 16 (1st Cir. 2012)

(quoting Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v.

Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)).

"To prevail in a trademark infringement claim under the Lanham Act,

'a plaintiff must establish (1) that its mark is entitled to

trademark protection, and (2) that the allegedly infringing use is

likely to cause consumer confusion.'" Oriental Fin. Grp., Inc. v.

Coop. de Ahorro y Crédito Oriental, No. 15-1009, 2016 WL 4123845,

at *4 (1st Cir. 2016) (analyzing trademark infringement pursuant to

---

[6] United States Code title 15 section 1125(a) creates two causes of
action: "(1) false representations concerning the origin,
association or endorsement of goods or services ('false
association' or 'false designation of origin')" pursuant to
§ 1125(a)(1)(A); and "(2) false representations in advertising
concerning the quality of goods or services ('false advertising')"
pursuant to § 1125(a)(1)(B). Landrau v. Solis-Betancourt, 554 F.
Supp. 2d 117, 121 (D.P.R. 2008) (Besosa, J.) (citing Twentieth
Century Fox Film Corp. v. Marvel Enterprises, Inc., 277 F.3d 253,
259 (2d Cir. 2002)). Plaintiff Comite references 15 U.S.C.
§ 1125(a) generally, but later specifies that defendants "falsely
designat[ed] the origin of the service" in violation of section
1125(a)(1)(A). (Docket No. 53 at pp. 28, 32.) Plaintiff also
references "dilution of the mark," id. at p. 32, but makes no claim
to that regard pursuant to 15 U.S.C. 1125(c).

15 U.S.C. § 1125(a)(1)(A)) (quoting <u>Bos. Duck Tours, LP v. Super</u>
<u>Duck Tours, LLC</u>, 531 F.3d 1, 12 (1st Cir. 2008)).

Even if a plaintiff is able to establish that the mark is
entitled to protection and that consumer confusion is likely, a
plaintiff may still fail to establish trademark infringement if
they have abandoned their rights to the claim through "naked
licensing." <u>John C. Flood of Va., Inc. v. John C. Flood, Inc.</u>, 642
F.3d 1105, 1108 (D.C. Cir. 2011) (quoting <u>Barcamerica Int'l. USA</u>
<u>Trust v. Tyfield Imps., Inc.</u>, 289 F.3d 589, 596 (9th Cir. 2002)
("[W]here the licensor fails to exercise adequate quality control
over the licensee, 'a court may find that the trademark owner has
abandoned the trademark, in which case the owner would be estopped
from asserting rights to the trademark.'")).

   1.   **The "La SanSe" and "Fiestas de la Calle" Marks**

        Plaintiff Comite alleges ownership and use of the three
marks predating its incorporation claiming that it ratified the use
of the marks by Vecinos.  (Docket No. 53 at pp. 10-11, 28-29.)
Plaintiff, however, fails to provide evidence of ratification,
creation, or continued use of the "La SanSe" and "Fiestas de la
Calle" marks.  <u>See</u> Docket Nos. 108 at pp. 2, 9-11; 131 at pp. 3-4,
10-12; <u>see also</u> 108-11 at p. 4; 108-5 at p. 18; 108-8 at pp. 3-4.
Because neither the Comite nor the MSJ has used, or knows the
origin of, the marks "La SanSe" or "Fiestas de la Calle,"
plaintiff's claims regarding the "La SanSe" and "Fiestas de la

Calle" marks are **DISMISSED**.  The Court continues its trademark
infringement analysis solely in regard to the "Fiestas de la Calle
San Sebastian" mark.

### 2.   The "Fiestas de la Calle San Sebastian" Mark

Defendants argue that the Comite's trademark claims
should be dismissed because the mark "Fiestas de la Calle San
Sebastian" is generic, abandoned, or descriptive and therefore not
a valid mark.  (Docket Nos. 107 at pp. 4-20; 161 at pp. 2-9.)

"[I]n order to be eligible for trademark protection, a
mark must qualify as distinctive."  Borinquen Biscuit Corp. v. M.V.
Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006).  "Distinctiveness
may be either 'inherent,' [meaning] the intrinsic nature of the
trade [mark] serves to identify a particular source, . . . or
'acquired,' *i.e.*, the trade [mark] has acquired a 'secondary
meaning' whereby the public views its primary significance . . . as
identifying the source of the product rather than the product
itself."  Industrias Wet Line S.A. de C.V. v. Multy Brands
Distribs., Corp., 144 F. Supp. 3d 262, 266 (D.P.R. 2010) (Besosa,
J.) (internal quotations and brackets omitted) (quoting Yankee
Candle Co., Inc. v. Bridgewater Candle Co., 259 F.3d 25, 38 (1st
Cir. 2001)).  "Trademark law categorizes proposed marks along a
spectrum of distinctiveness, based on their capacity to serve such
a source-identifying function.  A mark is classified as:
(1) generic (least distinctive), (2) descriptive, (3) suggestive,

(4) arbitrary, or (5) fanciful (most distinctive)." Bos. Duck, 531 F.3d at 12 (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)).  Suggestive, arbitrary, and fanciful marks qualify for trademark protection without any additional showing. Id. at 13.

"Descriptive terms . . . directly describe a particular quality, function, or characteristic of a product or service," Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1039–40 (D.C. Cir. 1989), but "are not inherently capable of serving as source-identifiers," Bos. Duck, 531 F.3d at 13. Descriptive marks are only afforded trademark protection "after the owner has provided sufficient evidence to establish that the public associates the term or phrase not only with a specific feature or quality, but also with a single commercial source." Id. "When a descriptive phrase becomes associated with a single commercial source, the phrase is said to have 'acquired distinctiveness' or 'secondary meaning,' and therefore functions as a trademark." Id. In analyzing whether a mark has secondary meaning, courts may consider the "length or exclusivity of use of a mark, the size or prominence of plaintiff's enterprise, [] the existence of substantial advertising by plaintiff . . . the product's established place in the market[,] and proof of intentional copying." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 42 (1st Cir. 1998) (internal citations and quotations omitted).

Generic terms are terms that designate a class or genus of goods, such as "car" or "pizza," but do not have the capacity to identify a particular source. Bos. Duck, 531 F.3d at 13-14. As a result, "generic terms are incapable of becoming trademarks, at least in connection with the products that they designate." Id. at 14. "A word may be generic of some things and not of others: 'ivory' is generic of elephant tusks but arbitrary as applied to soap." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980); see also Public Impact LLC v. Bos. Consulting Grp., Inc., Civ. No. 15-13361-FDS, 2016 WL 1048884 (D. Mass. Mar. 11, 2016). Several types of evidence can be considered in determining genericness, including competitors' use, plaintiff's use, media usage, testimony of persons in the trade, and consumer surveys. Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 706 (1st Cir. 2007).

Here, plaintiff Comite alleges that the "FCSS" mark has acquired distinctiveness because it has gained a 'secondary meaning' and thus is neither generic nor descriptive. (Docket Nos. 53 at 29; 118 at pp. 7-9.) Several facts contribute to a finding that the mark "Fiestas de la Calle San Sebastian" is not merely generic or descriptive, but has acquired a secondary meaning. First, it is internationally known. (Docket Nos. 108-8 at p. 10; 108 at p. 11; 131 at p. 12.) Second, the mark has been used by either Vecinos or the Comite for many years. (Docket Nos. 108-4 at p. 3; 108-5 at p. 6.) Finally, another festival, in

Miami, has adopted the name after several occurrences of the FCSS in San Juan, a sign of intentional copying.  See Docket No. 108-8 at p. 9.

Assuming arguendo, that the mark is associated with the annual January festival on Calle San Sebastian, plaintiff still does not establish that the term has acquired secondary meaning because the term does not point to the source of the good.  "If a mark is primarily associated with a type of product rather than with the producer, it is generic." See T. Marzetti Co. v. Roskam Baking Co., 680 F.3d 629, 634 (6th Cir. 2012) (finding "Texas Toast" mark was generic because it referred to large bread product, not to producer of the bread product); Welding Servs. Inc. v. Forman, 509 F.3d 1351, 1359 (11th Cir. 2007) (finding "welding services" mark was generic); Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5, 9 (1st Cir. 1981) (holding "lite" mark was generic because it referred to the class of beers having a reduced calorie count not to the producer of the beers).  The evidence here shows that both the Comite and the MSJ acquired sponsors and arranged performances and that individual artisans also displayed their work in kiosks.  No evidence was presented that the kiosks were labeled nor that the entertainment was branded designating whether they were managed by the Comite or the MSJ.  A public attendee enjoying the food, music, and wares of the FCSS would not know if they were purchasing a drink from a Comite-sponsored kiosk or listening to a band coordinated by the MSJ.  This is fatal to

plaintiff's trademark claim because no evidence shows that consumers associate the mark with the <u>source</u> of the FCSS only with the goods, dates, and location of the FCSS. Therefore, the mark has not obtained secondary meaning and has not risen above the level of generic or descriptive. Consequently, plaintiff has provided no evidence that the mark "Fiestas de la Calle San Sebastian" is entitled to trademark protection.

Because plaintiff has failed to establish that the mark "Fiestas de la Calle San Sebastian" is entitled to trademark protection, the Court need not address the second prong, "consumer confusion," or defendants' defense of "fair use." The Court **GRANTS** summary judgment on plaintiff Comite's trademark claims.

**B.    Political Discrimination & Free Association**

Next, defendants move for summary judgment on plaintiff's political discrimination claim. Plaintiff Comite alleges that defendants discriminated against it, in violation of the United States Constitution's First Amendment Freedom of Association Clause, by giving preferential treatment to contractors Buena Vibra Group and San Juan Entertainment, who, along with Mayor Cruz, are members of the Popular Democratic Party. (Docket No. 53 at pp. 27-28.)

The First Amendment to the United States Constitution embodies the right to be free from political discrimination. Barry v. Moran, 661 F.3d 696, 699 (1st Cir. 2011); see U.S. Const. amend. I

("Congress shall make no law . . . abridging the freedom of speech
. . . or the right of the people to peaceably assemble . . . ."). 
"The right to associate with the political party of one's choice is
an integral part of the basic constitutional freedom to associate
with others for the common advancement of political beliefs and
ideas protected by the First Amendment." Carrasquillo, 494 F.3d at
4 (citing Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973)).  First
Amendment protection applies to both government employees and
independent contractors.  Nieves-Villanueva v. Soto-Rivera, 133
F.3d 92, 98-99 (1st Cir. 1997) ("[T]he First Amendment provides
protection to independent contractors similar to those afforded
government employees.") (citing Bd. of Cty. Comm'rs v. Umbehr, 518
U.S. 668, 684-85 (1996) (holding that the First Amendment protects
independent contractors from termination or nonrenewal of an
automatic-renewal contract when there is a pre-existing commercial
relationship)); see also Decotiis v. Whittemore, 635 F.3d 22, 26
n.1 (1st Cir. 2011).

    To survive a motion for summary judgment, plaintiff has the
burden to establish a *prima facie* case of political discrimination. 
Carrasquillo, 494 F.3d at 4.  A *prima facie* case of political
discrimination based on the First Amendment consists of four
elements:  "(1) that the plaintiff and defendant have opposing
political affiliations, (2) that the defendant is aware of the
plaintiff's affiliation, (3) that an adverse employment action
occurred, and (4) that political affiliation was a substantial or

motivating factor for the adverse employment action." Lamboy-Ortiz v. Ortiz Velez, 630 F.3d 228, 239 (1st Cir. 2010); see also Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 96 (1st Cir. 2014) (quoting Torres-Santiago v. Mun. of Adjuntas, 693 F.3d 230, 236 (1st Cir. 2012)); Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011) (internal citations omitted).  The non-renewal of a contract constitutes an adverse employment action.  Decotiis, 635 F.3d at 29 n.5 (citing Barton v. Clancy, 632 F.3d 9, 26 (1st Cir. 2011)).

Here, plaintiff Comite has failed to establish the elements required for a *prima facie* case of political discrimination. Regarding the first prong, opposing political affiliation, plaintiff failed to rebut defendant's statement that the Comite is apolitical.  See Docket No. 108-11 at p. 7-8.  Plaintiff also failed to establish the political affiliations of Mayor Cruz, San Juan Family Entertainment, and Buena Vibra Group.  See Docket Nos. 108-4 at pp. 20, 25; 108-5 at pp. 14-15; 108-8 at p. 6; 108-11 at pp. 9-10.  Therefore, plaintiff fails to establish that plaintiff Comite and defendants have opposing political affiliations.

Additionally, plaintiff has failed to satisfy the second prong of the *prima facie* case.  Plaintiff failed to rebut defendant's statement that Mayor Cruz has never questioned the Comite members regarding their political affiliations.  See Docket No. 108-4 at p. 25.  Plaintiff has not supported any fact detailing how Mayor

Cruz or other employees of the MSJ came to know plaintiff Comite's political affiliation.  Thus, plaintiff fails to satisfy prong two of the *prima facie* case because plaintiff Comite has failed to establish that defendants were aware of its political affiliation.

Because plaintiff failed to produce evidence to satisfy the first two prongs of the *prima facie* case for political discrimination, the Court need not reach the remaining two prongs. Plaintiff's failure to establish a *prima facie* case for political discrimination is lethal to their case on summary judgment. Accordingly, the Court **GRANTS** summary judgment to defendants on plaintiff's political discrimination claim.

## C.   Free Exercise of Religion & Religious Freedom Restoration Act

Plaintiff Comite alleges that defendants sought to eliminate plaintiff Comite's involvement in the FCSS through discriminatory policies and practices because of plaintiff Comite's interest in retaining the FCSS's religious origins.  (Docket No. 53 at p. 25.) Plaintiff claims that defendants' actions violate the First Amendment Free Exercise Clauses of the United States and Puerto Rico constitutions[7] as well as the Religious Freedom Restoration

---

[7] "The principles of the First Amendment to the United States Constitution are encapsulated in Article II §§ 3-4 of the Puerto Rico Constitution . . . .  [The United States Constitution and Puerto Rico Constitution] essentially protect the same type of conduct, with the Puerto Rico Constitution protecting a broader spectrum of speech."  <u>Watchtower Bible Tract Soc. of N.Y., Inc. v. Mun. of Santa Isabel</u>, No. CIV. 04-1452 GAG, 2013 WL 1908307, at *2 (D.P.R. May 6, 2013) (Gelpi, J.).

Act ("RFRA"), (42 U.S.C.A. § 2000bb-1)[8].  Id. at pp. 25-26, 34.
Defendants argue that plaintiff Comite's religious freedom claims
should be dismissed because the Comite has not produced evidence
that any act, ordinance, law, regulation, public policy, or action
by the MSJ prevented the Comite from exercising their religion.
(Docket No. 107 at p. 27.)

The United States Constitution prescribes that "Congress shall
make no law respecting an establishment of religion, or prohibiting
the free exercise thereof . . . ."  U.S. Const. amend. I.[9]
Similarly, the Puerto Rico Constitution states that "[n]o law shall
be made respecting an establishment of religion or prohibiting the
free exercise thereof."  Puerto Rico Const. Art. II, § 3.  Here,
plaintiff Comite fails to identify any MSJ law, ordinance, or
regulation that allegedly prohibited or impeded their ability to
participate in the 2015 FCSS.  Because the Free Exercise of
Religion clauses of the United States and Puerto Rico Constitutions
both expressly pertain to laws that prohibit free exercise of

---

[8] RFRA applies to actions by the Commonwealth of Puerto Rico as a
covered entity of the United States, RFRA, 42 U.S.C. § 2000bb-2(2),
and is not affected by the United States Supreme Court decision in
City of Boerne v. Flores, 521 U.S. 507, 536 (1997), which found
application of RFRA to the states to be unconstitutional. Burwell
v. Hobby Lobby Stores, Inc., 134 S.Ct. 2751, 2767 (2014).

[9] First Amendment protections, including those pursuant to the free
exercise of religion, apply to actions by the state and local
governments. Guru Nanak Sikh Soc. of Yuba City v. Cty. of Sutter,
456 F.3d 978, 985 n.7 (9th Cir. 2006) (citing Elk Grove Unified
Sch. Dist. v. Newdow, 542 U.S. 1, 8 n.4 (2004) abrogated on other
grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,
134 S. Ct. 1377 (2014).

religion, and because plaintiff has identified no such law, the Court **GRANTS** defendants motion for summary judgment regarding plaintiff Comite's Free Exercise Clause claims pursuant to the United States and Puerto Rico Constitutions.

The Religious Freedom Restoration Act ("RFRA") states that:

> [The g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except . . . if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(a)-(b).   The act defines "exercise of religion" or "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A).

A claim pursuant to the RFRA requires a showing that (1) the action was an exercise of religion, and (2) that the action substantially burdened that exercise of religion. See Gary S. v. Manchester Sch. Dist., 374 F.3d 15, 21-22 (1st Cir. 2004) (discussing whether the exercise of religion prong is based on subjective or objective view of religion, but deciding claim on second prong holding that "the mere non-funding of private secular and religious school programs does not 'burden' a person's religion or the free exercise thereof").

Here, plaintiff Comite's RFRA claim centers on the MSJ's alleged actions to keep it from conducting religious activities at the FCSS, including:

1.    the decision as to who to honor;

2.    the ribbon cutting ceremony with the priest's
      blessing;

3.    the procession from the Abraham Lincoln School with
      the religious authorities and the traditional
      Cabezudos;

4.    the traditional music and dance presentations at the
      Plaza del Quinto Centenario for the entire four days
      of the Fiestas de la Calle San Sebastian;

5.    the Sunday mass and celebration; and

6.    the use of sufficient kiosks so that the plaintiff
      can finance its community efforts, that is the 27
      kiosks around the Plaza del Quinto Centenario.

(Docket No. 53 at pp. 25-26.)   Plaintiff Comite has failed to provide evidence that these activities are exercises of religion.

Assuming arguendo that these activities qualify as exercises of religion pursuant to RFRA, plaintiff Comite fails to establish that the MSJ actions substantially burdened its exercises of religion.   It is uncontested that during the FCSS the Comite decided to and honored Felix "Tito" Trinidad, the Comite held a ribbon cutting ceremony, the Comite was contractually permitted to perform cultural activities, several religious masses and events were held, and the Comite contracted with the MSJ for use of twelve kiosks.   (Docket Nos. 108-11 at p. 11; 108-4 at pp. 9, 21-22; 108-13 at pp. 1, 3.)   The Comite presents no evidence that the MSJ limited the Comite's performance of these religious activities in a way that substantially burdened the Comite's exercise of religion.   Nor does plaintiff Comite present evidence to establish

that the MSJ prohibited it from conducting the processional with the traditional Cabezudos.  Accordingly, the Court finds no genuine dispute of material fact regarding plaintiff Comite's RFRA claim and that defendant is entitled to judgment as a matter of law on this issue.  Thus, the Court **GRANTS** summary judgment to defendant on plaintiff Comite's RFRA claim.

**D.   Free Speech**

Next, plaintiff Comite alleges that defendants violated its right to free speech by replacing the traditional Puerto Rican cultural music and activities – *danza*, *plena*, and *bomba* – with secular presentations, (Docket No. 53 at p. 26), and by retaliating against the Comite for negative statements made by a Comite member about Mayor Cruz.  (Docket No. 118 at pp. 10-14.)[10]  Defendants argue that there is no law, ordinance, or regulation that inhibited plaintiff's free speech, but instead the MSJ coordinated with the Comite to present these cultural activities at a specified time and place.  (Docket No. 107 at pp. 35-40.)

To prevail on a First Amendment Free Speech retaliation claim, the plaintiff must establish (1) that the speech was constitutionally protected, and (2) that the speech was a "substantial and motivating factor" for the adverse action.

---

[10] Plaintiff initially alleged that defendants' retaliation was in response to the filing of this lawsuit, (Docket No. 53 at p. 26), but then later argued the retaliation was in response to one of the Comite member's negative comments about the mayor, (Docket No. 118 at pp. 10-14).

Umbehr, 518 U.S. at 675; Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006).[11]   Plaintiff, however, has presented no evidence that a Comite member made statements, that the MSJ had knowledge of these statements, or that the 2015 FCSS contract had less favorable terms than previous contracts.  Without establishing that an adverse action occurred – less favorable contract terms – or that the MSJ had knowledge of the statements in order to be motivated by their content, plaintiff Comite has not met its burden and thus cannot survive summary judgment.  The Court **GRANTS** summary judgment to defendants on plaintiff's free speech retaliation claim.

Plaintiff makes no arguments opposing defendants' motion for summary judgment on plaintiff's First Amendment free speech claim. Instead, plaintiff reiterates its political discrimination claims, arguing that the MSJ "discriminated against the Comite's cultural offerings in order to favor political supporters with overpriced and well-nigh worthless offerings."  (Docket No. 118 at p. 13.) "It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument."  Rodriguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out

---

[11] "The similarities between government employees and government contractors with respect to [First Amendment freedoms] are obvious . . . .  Because of these similarities, [the Court] turn[s] initially to our government employment precedents for guidance" Bd. of Cty. Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996).

their issues clearly, highlighting the relevant facts and analyzing on-point authority."). Because plaintiff has failed to provide any evidence, case support, or argument that the cultural music and dances are protected speech and that defendants infringed on that speech, the Court finds waived plaintiff's remaining First Amendment free speech claim.

## E.   Libel

Plaintiff Comite alleges that defendants have libeled it by making negative statements about the Comite's financial activities which the defendants knew were false and which caused the Comite to lose Coca Cola and Medalla beer as official sponsors. (Docket No. 53 at p. 33.) Defendants argue that the Comite is barred from bringing a libel suit against Mayor Cruz in her official capacity and that the Comite has failed to establish the falsity of the statements and damages that they have caused. (Docket No. 107 at pp. 41-43.) Plaintiff responds that is does not need to establish damages because the mayor's statements constitute libel *per se.* (Docket No. 118 at p. 16.)

Pursuant to Puerto Rico Commonwealth law,

> Libel is the malicious defamation of a person made public by writing, printing, . . . or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him . . . .

P.R. Laws Ann. tit. 32 § 3142.[12]

"To prevail on a [libel] action under Puerto Rico law, a plaintiff must therefore prove: (1) that the information is false; (2) that he or she suffered real damages; and (3) that in the case of a private figure, the publication was negligently made." Gonzalez Perez v. Gomez Aguila, 312 F. Supp. 2d 161, 173 (D.P.R. 2004) (Arenas, J.); see also Villaneuva v. Hernandez Class, 128 P.R. Dec. 618, 642 (P.R. 1991) (internal citations omitted) ("The plaintiff in a libel action must show, first of all, that the information published is false and has caused him actual damage."). "Where the defendant has made statements libelous *per se*, plaintiff need present no proof of reputational damage more than that defendant published the libelous writing to another." Gierbolini Rosa v. Banco Popular de P.R., 930 F. Supp. 712, 716-17 (D.P.R. 1996) (Fuste, J.) (citing Bosch v. El Imparcial, 87 P.R. 269, 284 (1963)).

The Court need not decide if the alleged statements were libelous *per se* or if plaintiff suffered damages, because plaintiff has failed to provide evidence that the statements were false. Plaintiff's two properly supported qualifying facts pertain to the issues of publication, (Docket No. 108-5 at p. 11 (testimony of Comite member that she heard Mayor Cruz say that "the Comite

---

[12] The Court analyzes plaintiff's claims pursuant to P.R. Laws Ann. tit. 32 § 3142, the proper libel standard as announced in Gonzalez Perez v. Gomez Aguila, 312 F. Supp. 2d 161, 173-74 (D.P.R. 2004) (Arenas, J.).

members were cooking the accounting books")), and damages (Docket No. 108-8 at p. 13 (testimony of Comite member that his cousin told him to "Get out of [the Comite]" after hearing statements on the radio)).  Plaintiffs have presented no evidence to establish that Mayor Cruz' statement was false.  The Court, therefore, **GRANTS** defendants summary judgment regarding plaintiff Comite's libel claim.

**F.   Good Faith in Contracting**

Plaintiff Comite's final claim alleges that defendants "breached their obligation under Puerto Rico law to negotiate in good faith with the Comite."  (Docket No. 53 at pp. 34-35.) Defendants argue that the Court should decline to exercise supplemental jurisdiction over this claim because all of plaintiff's federal claims have been dismissed. (Docket No. 107 at p. 44.)

The district court has discretion in exercising supplemental jurisdiction and may decline to do so if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In deciding whether to decline supplemental jurisdiction, courts consider a variety of factors, including "fairness, judicial economy, convenience, and comity." Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015); see also Ticket Center, Inc. v. Banco Popular de P.R., 613 F. Supp. 2d 162, 180-81 (D.P.R. 2008) (McGiverin, J.) (declining to exercise supplemental

jurisdiction over remaining Commonwealth law claims after granting summary judgment on all federal claims despite advanced stage of litigation).  Here, all of plaintiff's federal law claims and its Commonwealth libel claim have been dismissed.  Additionally, plaintiff has failed to respond to defendant's request for summary judgment on this claim or to assert any fact pertaining to this claim.  In light of this and after consideration of the supplemental jurisdiction factors, the Court declines to exercise supplemental jurisdiction and **DISMISSES WITHOUT PREJUDICE** plaintiff's Commonwealth contract claims.

**CONCLUSION**

Because no genuine dispute of material fact exists regarding plaintiff Comite's claims, the Court **GRANTS** defendants' motion for summary judgment, **DISMISSES with prejudice** plaintiff's federal claims and its libel claim pursuant to Puerto Rico law, **DISMISSES without prejudice** plaintiff's Commonwealth contract claims, (Docket No. 107), and **ACCEPTS** defendants' motion in compliance with the Court's Order at Docket No. 203, (Docket No. 207).

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 13, 2016.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE